UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

SHELVA MATTHEWS, as executrix        )
of the Estate of Terry Matthews,     )
                                     )
        *Plaintiff*,                 )
                                     )        Case No: 1:06-cv-7
v.                                   )        Judge Mattice
                                     )
SUN LIFE ASSURANCE COMPANY OF        )
CANADA and JEFFERSON PILOT           )
FINANCIAL INSURANCE COMPANY,         )
                                     )
        *Defendants*.                )

## MEMORANDUM AND ORDER

This case involves a dispute between a former employee of the Krystal Corporation, Terry Matthews, Krystal's former provider of life insurance, Jefferson Pilot Financial Insurance Company ("Jefferson Pilot"), and Krystal's current provider of life insurance, Sun Life Assurance Company of Canada ("Sun Life"). Terry Matthews brought a claim under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA") against Jefferson Pilot and Sun Life for improper denial of benefits. Shelva Matthews assumed prosecution of this case when Terry Matthews died. [Court Doc. No. 26.]

After the sudden onset of a disabling illness, Matthews attempted to confirm his life insurance coverage first with Sun Life, then with Jefferson Pilot. Both companies denied him coverage and claimed that he should have been covered by the other provider. Matthews seeks to have the Court reverse either Jefferson Pilot's or Sun Life's denial of benefits.

Jefferson Pilot filed a counterclaim against Matthews seeking an equitable

determination that, if the Court were to determine that it is responsible for providing life insurance to Matthews, then the life insurance component of its plan be declared null and void based on a material misrepresentation made by or on behalf of Matthews during the administrative review of his claim. [Court Doc. No. 16-2.]

Before the Court are the following motions: (1) Plaintiff's motion for judgment on the pleadings (essentially a motion for judgment on the administrative record) [Court Doc. No. 31]; (2) Jefferson Pilot's cross-motion for judgment as a matter of law (essentially a motion for judgment on the administrative record) [Court Doc. No. 36]; (3) Sun Life's motion to deny relief and to affirm its decision to deny benefit (essentially a motion for judgment on the administrative record) [Court Doc. No. 34]; and (4) Plaintiff's motion for judgment on Defendant Jefferson Pilot's counterclaim, or, in the alternative, to dismiss Jefferson Pilot's counterclaim pursuant to Federal Rule of Civil Procedure 41(b) [Court Doc. No. 48].

Pursuant to 28 U.S.C. § 636(b)(1), the Court referred this matter to United States Magistrate Judge Susan K. Lee for a Report and Recommendation ("R&R") on the above motions. [Court Doc. No. 58] Magistrate Judge Lee entered her R&R on July 24, 2007 recommending that Sun Life be found to have acted arbitrarily and capriciously in denying Matthews benefits under its plan. [Court Doc. No. 59] Both Plaintiff and Sun Life filed timely objections. [Court Doc. Nos. 60 & 61]

For the reasons stated below, the Court **ACCEPTS AND ADOPTS**, in part, and **REJECTS**, in part, Magistrate Judge Lee's Report and Recommendations.

# I.    STANDARD OF REVIEW

The Court must conduct a *de novo* review of those portions of the R&R to which an objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C).  For those portions of the R&R to which objections have been filed, the Court will directly review the decision-making process underlying the Defendant's denial of benefits.

If the administrator or fiduciary is afforded discretion by the plan, the administrator's decision is reviewed under the arbitrary and capricious standard. *Evans v. Unum Provident Corp.*, 434 F.3d 866, 875 (6th Cir. 2006).   Magistrate Judge Lee found that both Defendant's life insurance plans grant discretion to the plan's administrator to interpret the plan's provisions and applied the arbitrary and capricious standard of review in making her recommendations. (R&R at 21.) No party has specifically objected to the use of the arbitrary and capricious standard of review.[1]  The Court will therefore employ the arbitrary and capricious standard of review when considering the decision-making process underlying each Defendant's denial of benefits.

# II.   FACTS

The report and recommendation outlined the applicable facts at length.  The parties have not objected to the fact statement contained in Magistrate Judge Lee's R&R nor have

---

[1]    Sun Life has objected to the Report and Recommendation on the basis that Magistrate Judge Lee "pa[id] lip service to the deferential arbitrary and capricious standard of review" while  actually applied *de novo* review to Sun Life's claim determination." (Sun Life Assurance Company's Objection to the Magistrate Judge's Report and Recommendation ("Sun Life Objections") [Court Doc. No. 61] at 10.)  Sun Life is thus claiming that Magistrate Judge Lee improperly applied the arbitrary and capricious standard of review, not that the standard itself was improper.  (*Id.*)

the parties objected to any factual findings in the R&R.  The Court therefore **ACCEPTS** and **ADOPTS** by reference the entire background section from the R&R. [R&R at 3-13].

### III.    ANALYSIS

The Court notes that this case is difficult both factually and procedurally because the Plaintiff sought coverage from two different insurance companies under the terms of two different insurance plans.  The Court must review each company's denial of benefits based only upon the information that was available to each insurance company at the time of its final decision, as evidenced by each company's administrative record submitted to the Court.  The Court will refer to Sun Life's administrative record as "Sun Life A.R."  and will refer to the Jefferson Pilot administrative record as "Jeff Pilot A.R."

Another complication in this case is that both Defendant insurance companies attempt to point the finger at one another.  Each company denied Matthews's claim, in part, because it felt that Matthews should have been covered by the other provider.  One of the problems that arises out of the companies' finger-pointing is that, under the legal standard of review imposed upon the Court in this ERISA case, the Court is to afford deference only to the insurance company's interpretation of *its own* plan.  The Court is not directed to afford deference to one insurance company's interpretation of *another insurer's* plan.

The two plans at issue here do not contain identical or even substantially similar language, and therefore may not be construed *in pari materia*.  Each plan requires a completely separate inquiry into the quantity and quality of work performed by Matthews during his four-month attempt to return to work in 2004. Sun Life determined that Matthews's return to work was not substantial enough to activate his life insurance policy

because he never met the "Actively at Work" requirement in its plan. Jefferson Pilot, on the other hand, determined that Matthews's return to work at full salary was too substantial for him to qualify as "totally disabled" as that term is defined in its life insurance plan.

Ultimately, the Court must determine whether, under the terms of each company's plan, each administrator's denial of benefits was arbitrary, capricious, made in bad faith or contrary to the law. As explained below, the Court finds that Sun Life's denial of benefits was based on a reasoned explanation, derived from substantial evidence, and was, therefore, not arbitrary and capricious. The Court finds that Jefferson Pilot's denial of benefits, on the other hand, was contrary to the law and therefore cannot be upheld.

### A.    Sun Life's Denial of Benefits was not Arbitrary and Capricious.

Matthews first sought coverage under Sun Life's life insurance plan after he left Krystal permanently in September of 2004. (Sun Life A.R. at 120.) Sun Life denied his claim, stating that he was not "Actively at Work" on the effective date of coverage. (Sun Life A.R. at 237.) Matthews appealed Sun Life's denial of benefits multiple times and Sun Life continued to deny his life insurance benefits. In its various denials, Sun Life asserted that Matthews: (1) was not in an eligible class (Sun Life A.R. at 115); (2) was covered by Jefferson Pilot's life insurance plan (Sun Life A.R. at 133); and (3) was not Actively at Work. (Sun Life A.R. at 111.)

As more fully explained below, the various reasons given by Sun Life in its denial of benefits relate to two separate aspects of its life insurance plan. Whether Matthews was in an eligible class and whether he was covered by the Jefferson Pilot insurance plan relate to whether Matthews was *eligible* for coverage under Sun Life's continuity of coverage provision. Whether Matthews was Actively at Work relates to whether Matthews, having

been determined to be eligible for coverage, actually became insured under the Sun Life plan. An employee who is *eligible for coverage* is neither in the same position, nor afforded the same rights, as an employee who is *actually insured* under an insurance plan.

The Court finds that Sun Life's determination that Matthews was *not eligible* for coverage under the continuity of coverage provision of its plan was arbitrary and capricious. The Court finds that Sun Life's determination that Matthews was *not entitled to benefits* because he never satisfied the Actively at Work requirement, on the other hand, was not arbitrary and capricious. Thus, Sun Life's denial of benefits was not arbitrary and capricious.

        1.     *Sun Life's Determination that Matthews Was Not Eligible for Coverage Was Arbitrary and Capricious.*

The continuity of coverage provision in Sun Life's plan states that an employee "may become insured" if:

1.     he was insured under the prior insurer's group Life policy immediately prior to January 1, 2004; and
2.     he is not Actively at Work on January 1, 2004; and
3.     he is a member of an Eligible Class under this Policy; and
4.     premiums for the Employee are paid up to date; and
5.     he is not receiving or eligible to receive benefits under the prior insurer's group Life policy.

(Sun Life A.R. at 22.) There is no dispute that: (1) Matthews was covered under Jefferson Pilot's plan immediately prior to January 1, 2004, (2) he was not Actively at Work on January 1, 2004 due to his illness, and (3) his premiums were paid up to the relevant date.

Sun Life determined that Matthews was ineligible for coverage, in part, because it had determined that he was covered or eligible for coverage under the Jefferson Pilot plan.

(*Id.* at 133.)   Magistrate Judge Lee found that this determination was arbitrary and capricious because Sun Life's administrative record did not include a copy of Jefferson Pilot's life insurance policy.   (R&R at 35.)   Sun Life objects to this finding.   (Sun Life Objections at 8.)

ERISA limits the Court's inquiry to the administrative record as it existed when the plan administrator made its final decision.   *Moon v. UnumProvident Corp.*, 405 F.3d 373, 378-79 (6th Cir. 2005).  If the administrative record does not show that the administrator offered a "reasoned explanation" based on substantial evidence, the decision is arbitrary or capricious.  *Id.* at 379.

The Court agrees with Magistrate Judge Lee's finding in this regard, as set forth in her report and recommendation.  Sun Life could not have reasonably evaluated Matthews's potential eligibility for coverage under Jefferson Pilot's plan without a copy of the plan documents.  An administrator's decision that lacks a "reasoned explanation" based on the evidence is arbitrary and capricious.  Sun Life's determination that Matthews did not meet the fifth requirement for continuity of coverage was therefore arbitrary and capricious.

Sun Life also denied Matthews coverage because it determined that he was not a member of an eligible class.  (Sun Life A.R. at 115.)  In its review process, Sun Life found that Matthews was not a member of an eligible class because he did not have the capacity to work thirty hours in a week.  (*Id.*)

One of the Eligible Classes in the Sun Life plan was: "Full-Time Director hired on December 10, 1973 scheduled to work at least 30 hours per week."  (Sun Life A.R. at 44.)  It is undisputed that this class was expressly created for Matthews; he was the only full-time director who was hired on December 10, 1973.

Magistrate Judge Lee found that Sun Life's determination that Matthews was not in an eligible class was arbitrary and capricious because "[n]othing in the definition of Eligible Class as defined in the Sun Life policy . . . states that Matthews had to have the capacity to actually work 30 hours per week, only that Matthews had to be scheduled to work 30 hours per week." (R&R at 35-41.) Sun Life objects to this finding. (Sun Life Objections at 8.)

In an ERISA contract case, the Court must apply " 'federal common law rules of contract interpretation in making [a] determination.' " *Univ. Hosps. v. S. Lorain Merchs. Ass'n Health & Welfare Benefit Plan & Trust*, 441 F.3d 430, 431 (6th Cir.2006) (quoting *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998)). The general principles of contract law dictate that the Court "interprets the Plan's provisions according to their plain meaning, in an ordinary and popular sense." *Id.* Under a plain meaning analysis, the Court must "give effect to the unambiguous terms of the contract." *Id.*

After a *de novo* review of the record, the Court finds that Magistrate Judge Lee's reasoning and analysis were correct. The term "scheduled" means "to enter on a schedule; to make up a schedule for; to plan or appoint for a certain time or date." American Heritage Dictionary 1557 (4th Ed. 2000). There is no qualitative requirement in the phrase "scheduled to work." Under the terms of the plan, it was not reasonable for Sun Life to conclude that Matthews was not in an eligible class simply because Matthews could not physically work thirty hours a week. It is undisputed that Krystal scheduled Matthews to work at least thirty hours a week and that he was the director hired on the given date. (Sun Life A.R. at 203-04.) It was therefore arbitrary and capricious for Sun Life to

determine that Matthews did not satisfy the third requirement for the continuity of coverage provision.

Accordingly, it was arbitrary and capricious for Sun Life to determine that Matthews was not eligible for coverage under the continuity of coverage provision.

2. *Sun Life's Determination that Matthews Was Not Insured Under Its Plan Because He Never Achieved Actively at Work Status Was Not Arbitrary and Capricious.*

Sun Life's policy states that: "An employee will be insured, subject to the Delayed Effective Date of Insurance, on his Eligibility Date." (Sun Life A.R. at 106.) The Delayed Effective Date of Insurance provision states that: "The Effective Date of any initial, increased or additional insurance will be delayed for an Employee if he is not Actively at Work. The initial, increased or additional insurance will become effective on the date the Employee returns to an Actively at Work status." (*Id.*) Elsewhere the plan documents state:

**When does my insurance start?**

For non-contributory insurance, your insurance starts on the date you are eligible, if you are Actively at Work on that date.

For contributory insurance, your insurance starts on the later of:
- the date you apply; or
- the date you are eligible;
if you are Actively at Work on that date.
...

**What if I am not Actively at Work on that date?**

If you are not Actively at Work on the date your insurance would normally start, your insurance will not start until you are Actively at Work.

(Sun Life A.R. at 49.) Thus, the plan clearly states that, regardless of an employee's

-9-

eligibility for coverage, coverage *does not actually begin* until an employee is Actively at Work.

Matthews's eligibility date was January 1, 2004. (*Id.*) It is undisputed that he was out of work on disability on January 1, 2004 and therefore, was not Actively at Work. Thus, under the terms of the plan, his insurance did not actually begin until he became Actively at Work. The Plan states: "Actively at Work means that you perform all the regular duties of your job for a full work day scheduled by your Employer at your Employer's normal place of business or a site where your Employer's business requires you to travel." (Sun Life A.R. at 82.)

Over the course of its administrative review, Sun Life offered various reasons for denying coverage to Matthews. (Plaintiff's Brief in Support of her Motion for Judgment on the Pleadings [Court Doc. No. 32] at 5-12.) One of its proffered bases for denying coverage was because Matthews "did not return to full-time work." (Sun Life A.R. at 115.) In a separate communication, Sun Life stated that Matthews "could not possibly meet the definition of 'Actively at Work'" because he did not have the "physical capacity to work 30 hours per week." (Sun Life A.R. at 111.)

It is therefore clear, although perhaps not as succinctly stated as might be wished, that Sun Life ultimately concluded that Matthews's coverage never commenced under its plan because he never met the requirements of Actively at Work. (Sun Life A.R. at 132-33.) Magistrate Judge Lee found that Sun Life's determination in this regard was arbitrary and capricious because Matthews was scheduled by Krystal to work thirty to thirty-two hours a week, he was paid a full-time salary, and because Sun Life's "position on coverage was inconsistent." (R&R at 42-43.) Magistrate Judge Lee noted that there was medical

evidence indicating that Matthews struggled when he attempted to return to work, but held that the medical evidence was not adequate to support Sun Life's denial of benefits. (*Id.* at 40-42.) Sun Life objects to each of these findings. (Sun Life Objections at 8-9.) Sun Life argues that it was reasonable for the plan administrator to conclude that Matthews was not "Actively at Work" because he could not "perform all the regular duties of his job for a full work day." (*Id.*)

The term "perform" means: "1. To begin and carry through to completion; . . . 2. To take action in accordance with the requirements of; fulfill: *perform one's contractual obligations.*" American Heritage Dictionary 1305 (4th ed. 2000). The use of the word "perform" in the definition of "Actively at Work" allows the administrator to look into an employee's ability to fulfill the requirements of their job. Although the Court found above that the term "scheduled" did not allow for a qualitative inquiry into whether an employee was in an eligible class, the Court now finds that the term "perform" *does* contemplate a qualitative inquiry into whether an employee was Actively at Work. It was therefore reasonable under the terms of the plan for Sun Life to delve into what Matthews was capable of accomplishing during his time at work when considering whether he met the Actively at Work standard.

In determining whether an administrator's denial of benefits was arbitrary and capricious, the Court must review both the quantity and quality of the medical evidence in the administrative record. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003).

There was certainly evidence in the record that Matthews could not perform the

regular duties of his job for a full work day.  Matthews himself admitted in a vocational assessment that he could not overcome extreme fatigue and that he was never able to work more than four hours per day.  (Sun Life A.R. at 1390.)  Matthews told the assessor that he went to the office around 8:00 a.m. and usually left by 10:00 a.m. and that, by the time he left Krystal altogether, he knew he was unable to perform his usual job duties.  (*Id*.)

A certified rehabilitation counselor produced a fourteen page report that outlined Matthews's medical condition and drew conclusions about his ability to work.  (*Id*. at 1389-1402.)  The consultant stated:

> I believe some of the best information available that he was unable to perform his regular job is the fact that managers of the Krystal Company essentially told him that he was not accomplishing the duties and goals of his own occupation as the Human Resources Director.  Even with the accommodation made to him during the trial work period, Mr. Matthews was unable to perform at an acceptable level nor did he work more than 3 or 4 hours on a sustained basis during any of the period after his return to work.

(*Id*.)  The consultant reviewed a multi-page job description provided by Krystal and ultimately found that the entirety of the medical evidence in the file supported a conclusion that "Matthews has lost the essential physical and cognitive capacity to work in his own occupation as that job is defined by Krystal Company and as the work is envisioned in the Dictionary of Occupational Titles." (*Id*. at 1401.)

On the other hand, there is also evidence in the record showing that Krystal considered Matthews a full-time employee and that Krystal and Sun Life engaged in many conversations about whether Matthews was Actively at Work.  (Sun Life A.R. at 203.)  At one point, it appears that an employee of Sun Life stated that Matthews was Actively at Work.  (*Id*. at 149.)  There is also evidence in the record that Sun Life went back and forth

on whether Matthews was covered by its plan. (*Id.* at 150.) Sun Life's inconsistent statements regarding Matthews's coverage persuaded Magistrate Judge Lee to find that its denial of benefits was arbitrary and capricious. (R&R at 43-44.)

Sun Life's sixth objection to the R&R essentially claims that Magistrate Judge Lee applied *de novo* review while purporting to use the arbitrary and capricious standard of review. (Sun Life's Objections at 10.) Having reviewed the entire record *de novo* on this issue, the Court finds that Magistrate Judge Lee's analysis of whether Matthews was Actively at Work did not afford Sun Life's administrator the proper deference it is due when interpreting its own plan. An administrator's decision that offers a reasoned explanation for its denial of benefits and is based on substantial evidence in the record is not arbitrary or capricious. *Moon*, 405 F.3d at 379. The definition of Actively at Work allowed Sun Life's administrators to inquire into Matthews's ability to perform all of the regular duties of his job for a full work day. There is adequate evidence in the record supporting Sun Life's determination that Matthews never achieved "Actively at Work" status, as that term is defined in its plan. The Court therefore finds that Sun Life's denial of benefits on this basis was not arbitrary and capricious.

Accordingly, the Court respectfully **REJECTS** Magistrate Judge Lee's Recommendation that Plaintiff's motion for judgment on the pleadings be granted as to Sun Life. The Court also respectfully **REJECTS** Magistrate Judge Lee's Recommendation that Defendant Sun Life's motion to deny relief and to affirm its decision to deny benefits be denied.

Plaintiff's motion for judgment on the pleadings [Court Doc. No. 31] is **DENIED** as

to Sun Life. Sun Life's motion to deny relief and to affirm its decision to deny benefits [Court Doc. No. 34] is **GRANTED**. Plaintiff's above-captioned claims against Defendant Sun Life are **DISMISSED WITH PREJUDICE**.

**B.    Jefferson Pilot's Determination that Matthews Was No Longer Covered Under Its Plan was Arbitrary and Capricious.**

Although Krystal changed life insurance providers on January 1, 2004, its disability insurance was unaffected. At all times relevant to this case, Jefferson Pilot was Krystal's disability insurance provider.

In October 2004, Jefferson Pilot found Matthews to be totally disabled under its long-term disability plan, retroactive to the onset date of his illness in November 2003. (Jeff Pilot A.R. at 345.) Although its life insurance plan is separate from its long-term disability plan, when processing a long-term disability claim, Jefferson Pilot has an "integrated process" that it uses to determine if a claimant who has been awarded long-term disability benefits is eligible for waiver of life insurance premium benefits under its life insurance plan. (*Id.* at 118.)

When Jefferson Pilot processed Matthews's long-term disability claim, it determined that Matthews's "LDW" (last day worked) was in September 2004 and that, because Krystal had terminated its life insurance policy with Jefferson Pilot as of December 31, 2003, Matthews was not eligible for waiver of premium benefits. (*Id.* at 4.) Jefferson Pilot did not notify of Matthews of this determination. (*Id.*) Jefferson Pilot's policy at the time was to "not create a file and not send a letter (LINKS); therefore, the [claimant] was not given conversion rights." (*Id.* at 121.)

After his claim for life insurance waiver of premium benefits was denied by Sun Life,

Matthews contacted Jefferson Pilot. (Jeff Pilot A.R. 114-17.) Jefferson Pilot informed Matthews that "he was not eligible for the wavier of premium due to the termination of the group policy on December 31, 2003 and his return to work at full salary in 2004." (*Id.*) Jefferson Pilot concluded that "[i]nformation in the Long Term Disability claim file did not support that Mr. Matthews was totally disabled under this definition as of June 2004. . . Since Mr. Matthew's [sic] returned to work with full salary, he did not qualify for the Extension of Death Benefit as of June 1, 2005." (Jeff Pilot A.R. 118.)

Matthews appealed this determination in a letter to Jefferson Pilot. (Jeff Pilot A.R. 97-99.) There is evidence in the record indicating that Jefferson Pilot considered Matthews's claim after receiving his appeal. (Jeff Pilot A.R. 121-22.) However, Matthews contends that Jefferson Pilot never responded to his appeal. (Court Doc. No. 32 at 16.) Jefferson Pilot does not deny this claim. (Court Doc. No. 46 at 4-6.) The Court will therefore treat Jefferson Pilot's failure to respond as a denial of Matthews's appeal. 29 C.F.R. 2560.503-1(h)(4) ("The decision on review shall be furnished to the claimant within the appropriate time described in paragraph (h)(1) of this section. If the decision on review is not furnished within such time, the claim shall be deemed denied on review.")

Matthews claims that he should have continued to be covered by Jefferson Pilot's Extension of Death Benefit provision, which states:

> BENEFIT. Life insurance will be continued, **without payment of premiums**, for an Insured Person who:
> (1)    becomes Totally Disabled while insured under this policy and before reaching age 60;
> (2)    remains Totally Disabled for at least 6 months in a row; and
> (3)    submits satisfactory proof within the 7th through 12th months of disability; or:
>        (a)    as soon as possible after that; but
>        (b)    not later than the 24th month of disability; unless he or

she was legally incapacitated.

(Emphasis in original.) (Jeff Pilot A.R. at 138.)  The policy also states that any coverage provided pursuant to the Extension of Death Benefit terminates on "the day the Insured Person ceases to be Totally Disabled." (*Id.*)

> "Totally disabled" is defined in Jefferson Pilot's life insurance plan as:
>
> For this benefit, Total Disability or Totally Disabled means an Insured Person, due to sickness or injury:
>
> (1) is completely unable to perform his or her regular occupation; or to engage in any occupation for which such Insured Person is reasonably fitted by education, training or experience; and
> (2) remains so disabled for at least 6 months in a row.
>
> A person engaging in any gainful employment or occupation is not Totally Disabled.

(Jeff Pilot A.R. 23.)

It is undisputed that Krystal changed life insurance providers from Jefferson Pilot to Sun Life on January 1, 2004.  It is also undisputed that Matthews continued to be covered by the Jefferson Pilot life insurance plan beyond the plan's termination date of January 1, 2004 under the Extension of Death Benefit. (*Id.* at 118-19.)  Jefferson Pilot did not terminate its coverage of Matthews until his return to work on June 1, 2004. (*Id.*)

The basis for denial in Jefferson Pilot's notification letter was: "Since Mr. Matthew's [sic] returned to work with full salary, he did not qualify for the Extension of Death Benefit as of June 1, 2004."  (Jeff Pilot A.R. at 118.)

The record shows that Jefferson Pilot's review of Matthews's claim for continued coverage under its Extension of Death Benefit was limited solely to the fact that Matthews was paid his full salary upon his return to work.  (*Id.* at 104, 118-19.)  It determined that

Matthews's receipt of salary meant that he was "gainfully employed" and therefore not "totally disabled" as required to qualify for Extension of Death Benefits. (*Id.*) The timing of the termination of benefits also shows that Jefferson Pilot's only basis for termination was the fact that Matthews returned to work at Krystal.

The relevant question here is whether the Court can affirm Jefferson Pilot's determination that Matthews's return to work at full salary meant that he was "gainfully employed" and therefore not "totally disabled" under the terms of its plan. Jefferson Pilot claims that its determination was appropriate because of an unpublished Sixth Circuit decision that states that whether a person is "gainfully employed" turns on whether that person can "earn a reasonably substantial income rising to the dignity of an income or livelihood, even though the income is not as much as he earned before the disability." *Tracy v. Pharmacia & Upjohn Absence Payment Plan*, No. 05-22212, 2006 WL 2952752 (6th Cir. Oct. 12, 2006). Thus, Jefferson Pilot argues that it was reasonable to determine that Matthews was gainfully employed solely because he was being paid his full salary.[2]

---

[2]     In its Response in Opposition to Plaintiff's Motion for Judgment, Jefferson Pilot argues: "The fact that Matthews was paid full salary by Krystal during the time he was out of work, as well as once he returned to work, is irrelevant for purposes of determining whether he was 'gainfully employed' upon his return to work." (Court Doc. No. 46 at 8 n. 6.) This statement does not cite to the administrative record. The Court can not find any evidence in the administrative record showing that Jefferson Pilot knew, at the time that it denied Matthews's benefits, that Krystal had paid Matthews's full salary during the entire time that he was out of work. Indeed, the Court takes no position on whether Krystal did, in fact, pay Matthews his full salary from November 2003 to May 31, 2004.

    Jefferson Pilot based its denial on the fact that Matthews was "gainfully employed" as of June 1, 2004 because he "returned to work with full salary." (Jeff Pilot A.R. at 118.) Had there been evidence that Jefferson Pilot knew that Matthews was paid his full salary from November 2003 until May 31, 2004, while he was off from work, it would have been far from "irrelevant." That fact would indicate that the only change between May 31, 2004 and June 1, 2004 was that Matthews's physically attempted to

(Court Doc. No.32 at 18-19.)

The Sixth Circuit has held that "the appropriate determination in reviewing the decision of a plan administrator with respect to a claim for benefits is whether the decision was arbitrary, capricious, made in bad faith or otherwise contrary to law." *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988).

The Court finds that Jefferson Pilot's denial of benefits was contrary to the law. *See Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988). It is a long-standing rule that claimants should not be penalized for attempting to return to work. *See*, *e.g.*, *United States v. Spalding*, 293 U.S. 498, 505 (recognizing that an individual may work when really unable to do so and that such work does not preclude a finding of total disability); *Everhart v. State Life Ins. Co.*, 154 F.2d 347, 352 (6th Cir. 1946) ("Surely, it could not be seriously contended . . . that these brief spasmodic working intervals would bar, as a matter of law, [the claimant's] recovery of permanent and total disability benefits under the policy."); *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003) ("A desperate person might force himself to work despite an illness that everyone agreed was totally disabling. Yet even a desperate person might not be able to maintain the necessary level of effort indefinitely . . . A disabled person should not be punished for

_____

return to work. It would show that Krystal's payment of Matthews's salary was not dependent on his ability to work. If Jefferson Pilot had known that he was paid his full salary during his time off from work, it would have been completely unreasonable for Jefferson Pilot to determine that, as of June 1, 2004, Matthews was "gainfully employed" purely because he was paid his full salary.

As discussed above, the Court's review is limited to the administrative record as it existed at the time of the final denial of benefits. Because there does not appear to be evidence in Jefferson Pilot's administrative record showing that it was aware that Krystal had paid Matthews his full salary between November 2003 and May 31, 2004, the Court has not considered this possible fact in making its decision.

heroic efforts to work by being held to have forfeited his entitlement to disability benefits should he stop working.")  The Sixth Circuit has recently stated that an insurance company cannot "unfairly punish individuals who test their limitations and attempt to keep working before seeking benefits."  *Seitz v. Metropolitan Life Ins. Co.*, 433 F.3d 647, 651 (6th Cir. 2006).

Even more recently, the Sixth Circuit has specifically held that it was arbitrary and capricious for an administrator to deny disability benefits simply because an employee remained on the payroll.  *Rochow v. Life Insurance Co. of North America*, 482 F.3d 860, 865 (6th Cir. 2007).  In *Rochow*, the plaintiff, who had been president of his company for ten years, began experiencing unexplained memory loss, chills, sweating, and other symptoms.  Rochow was eventually demoted due to his inability to perform his job duties.  *Id.* at 862-63.  He attempted to continue working, even though his symptoms were worsening.  He was eventually asked to leave the company altogether and applied for disability.  *Id.*

The administrator of his insurance plan denied his disability claim on the basis that "[b]ecause [Rochow] continued to work, he cannot be considered disabled based on the policy's definition of disability."  *Id.* at 864.  The district court ruled that the administrator's determination was arbitrary and capricious and unsupported by the administrative record.  In offering its ruling, the court stated:

> The fact that he was able to work is certainly evidence for the Defense. However, when we have Mr. Tellerico saying he was on the payroll, but he wasn't able to do the work that he had been doing before, and we have such a severe loss of memory, compounded by the depression, and it is clear that that memory loss . . . may have contributed to his being demoted before he claimed disability, I think [Rochow] has prevailed.

. . .

The fact that he was collecting pay, I don't think is relevant.

*Id.* at 864-65.

The Sixth Circuit affirmed the district court's decision. The court stated: "The fact that Rochow remained on the payroll until January 2, 2002 is not determinative as to whether or not he was disabled during that time; there is no logical incompatibility between working full time and being disabled from working full time." *Id.* at 865 (internal quotations omitted.) The administrator's main reason for denying benefits was the fact that Rochow had continued to receive his salary. *Id.* at 864. The Sixth Circuit held that the administrator's denial of benefits "was not the result of a deliberate, principled reasoning process" and was therefore arbitrary and capricious. *Id.* at 866.

In this case, it is undisputed that Matthews would have still been covered under Jefferson Pilot's Extension of Death Benefit provision had he not attempted to return to work at Krystal. The United States Supreme Court has held that, where a claimant would have undoubtedly been found totally disabled had he refrained from working at all, the fact that he did return to work was not determinative of his disability claim. *Berry v. United States*, 312 U.S. 450, 455, 61 S.Ct. 637 (1941). Thus, according to *Berry*, Matthews's return to work could not properly be used as the determinative factor in Jefferson Pilot's denial of benefits.

The Court finds that Jefferson Pilot could not, within the purview of the law, determine that Matthews was "gainfully employed" and therefore not "totally disabled" simply because he attempted to return to work and was receiving his full salary. Jefferson Pilot's determination clearly punishes Matthews for an attempt to return to work. The law

does not allow this result.

The question thus becomes whether there is evidence in the record that would have appropriately allowed Jefferson Pilot to determine, on some other basis, that Matthews's return to work constituted "gainful employment." The Court finds that the substantial medical evidence in the record forecloses any possibility that Matthews's return to work could be considered "gainful employment." Without exception, the medical evidence shows that Matthews's attempted return to work was a failure. There is absolutely no dispute that Matthews could not actually perform his job duties when he was at work. Among other things, the evidence showed that Matthews's illness left him unable to work for more than two to four hours per day, unable to perform the regular duties of his job, and eventually led to Krystal's asking him to resign. (Jeff Pilot A.R. at 936.) Jefferson Pilot's own nurse consultant "felt that there was definatley [sic] supportive evidence based on the notes that he would have problems working at all." (*Id.* at 3.)

ERISA requires that an administrator engage in a "full and fair review" of a claim prior to making its determination. 29 U.S.C. § 1133(2); 29 CFR § 2560.503-1 (2003). In reviewing a benefit's determination, the Court is required to consider the quantity and quality of the medical evidence in the administrative record. *See McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). Both the quantity and the quality of the medical evidence in Jefferson Pilot's administrative record show that Matthews's return to work could not have constituted "gainful employment."

The Court's finding that Jefferson Pilot's denial of benefits was improper is bolstered by the fact that Jefferson Pilot is functioning under a conflict of interest in this case. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948 (1989). Where

the same entity both funds and administers a plan there is an "actual, readily apparent conflict . . . not a mere potential for one." *Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516, 527 (6th Cir. 2003). Although a finding of bias does not alter the standard of review, it is a factor that the Court must consider in determining whether an administrator's determination was arbitrary and capricious. *Id.*

There is no dispute that Jefferson Pilot itself would have paid Matthews's life insurance award had it determined that he was covered by its plan. During the administrative process, Jefferson Pilot claimed that it did not administer the life insurance plan. (Jeff Pilot A.R. at 119.) In its filings with the Court, however, Jefferson Pilot does not deny that it both funds and administers the plan. (Court Doc. No. 37 at 16 n. 11.) Nonetheless, the Court's review of the record shows that, regardless of what entity was the supposed "administrator" of the plan, Jefferson Pilot made all of the relevant determinations, including the ultimate decision to deny Matthews's life insurance benefits. Although not determinative, the Court considers Jefferson Pilot's conflict of interest a factor in favor of its refusal to uphold Jefferson Pilot's denial of benefits.

Jefferson Pilot's plan gave discretion to its administrator to interpret and apply the plan's provisions. This Court is therefore limited to determining whether the administrator's denial of benefits was arbitrary, capricious, made in bad faith, or contrary to the law. Jefferson Pilot's interpretation of its plan is contrary to the law and cannot be upheld.

Accordingly, the Court respectfully **REJECTS** Magistrate Judge Lee's Recommendation that Plaintiff's motion for judgment on the pleadings be denied. The Court also respectfully **REJECTS** Magistrate Judge Lee's Recommendation that Jefferson

Pilot's cross motion for judgment as a matter of law be granted.

Matthews's motion for judgment on the pleadings [Court Doc. No. 31] is hereby **GRANTED** with regard to its claim against Jefferson Pilot. Jefferson Pilot's cross motion for Judgment as a Matter of Law [Court Doc. No. 36] is **DENIED**.

## IV.    JEFFERSON PILOT'S COUNTER-CLAIM AGAINST MATTHEWS

Jefferson Pilot has filed a counterclaim against Matthews seeking equitable relief under 29 U.S.C. § 1132(a)(3). [Court Doc. No. 16-2.] Jefferson Pilot claimed that, if it was found to be liable for Matthews's life insurance benefits, "the life insurance component of such benefit plan is null and void based on material misrepresentations made by or on behalf of Mr. Matthews during the administrative review of Mr. Matthews' claim for benefits under the benefit plan." (*Id.* at 8.) The basis of Jefferson Pilot's counterclaim is that Matthews made "materially false" statements during the administrative process by "represent[ing] to Jefferson Pilot that he was disabled, while representing to Sun Life that he had returned to work as a full-time employee of Krystal." (*Id.* at 13.)

Matthews has moved for judgment on Jefferson Pilot's counterclaim or, in the alternative, to have Jefferson Pilot's counterclaim dismissed for failure to prosecute under Civil Rule 41(b). (Court Doc. No. 48.)

Matthews moved for judgment on the pleadings pursuant to the procedures set forth in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998). (Court Doc. No. 48.) Jefferson Pilot alleges that the *Wilkins* procedures are not applicable because its counterclaim alleges a violation of 29 U.S.C. § 1132(a)(3) and *Wilkins* applies only to claims under 29 U.S.C. § 1132(a)(1)(B). (Court Doc. No. 54 at 8.)

The Court finds that the procedural requirements outlined in *Wilkins* were explicitly limited to benefit determinations involving § 1132(a)(1)(B). Jefferson Pilot's counterclaim differs from a straight claim for benefits under § 1132(a)(1)(B) as it seeks equitable relief in form of rescission of the life insurance contract under § 1132(a)(3). (Court Doc. No. 46 at 7 n. 5.) Therefore, Jefferson Pilot's counterclaim will not be dismissed for failure to comply with the *Wilkins* procedures.

Matthews also moved for dismissal under Federal Rule 41(b) for failure to prosecute. Matthews argues that because "Jefferson Pilot has chosen not to pursue its Counterclaim in the time allowed under the original schedule, and has not asked the Court to amends [sic] the Scheduling Order," its counterclaim should be dismissed. (Court Doc. No. 49 at 6.)

Jefferson Pilot contends that the Court's scheduling order applied only to Matthews's claim under § 1132(a)(1)(B). (Court Doc. No. 54 at 14.) Jefferson Pilot also argues that, should the Court find that the scheduling order applied to its counterclaim, nothing in Rule 41(b) necessitates dismissal for failure to file a dispositive motion. (*Id.* at 15.)

Rule 41(b) states: "For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against the defendant."

The Court's original scheduling order was modified on November 9, 2006 in an Order stating: "Any cross-motions for judgment shall be filed on or before November 30, 2006." [Court Doc. No. 28.] The November 9, 2006 Order also cancelled a number of deadlines and stated that such events would be rescheduled "if necessary after the Court's

ruling on any motions for judgment." (*Id.*) Jefferson Pilot's Amended Answer, which contained its counterclaim, was not filed until December 11, 2006, nearly two weeks after the scheduling order's deadline for filing "cross-motions for judgment." [Court Doc. Nos. 42 & 28.]

The Court concludes that its amended scheduling order was intended only to set a deadline for motions for judgment on Matthews's § 1132(a)(1)(B) claim, as envisioned in *Wilkins*. The November 9, 2006 order is unambiguous in that it set a deadline for "cross-motions for judgment." Because Jefferson Pilot's counterclaim was not even filed until after the November 30, 2006 deadline, the scheduling order cannot be construed to have completely undermined Jefferson Pilot's ability to pursue its counterclaim.

Moreover, were this Court to find that its scheduling order and its corresponding deadlines were applicable to Jefferson Pilot's counterclaim, it would still not be a basis for dismissal of the counterclaim. The Federal Rules of Civil Procedure do not require a plaintiff to file a dispositive motion. Jefferson Pilot's failure to file a dispositive motion by the deadline outlined in the Court's scheduling order is not grounds for dismissal.

In the R&R, Magistrate Judge Lee recommended that Jefferson Pilot's cross motion for judgment as a matter of law be granted and therefore she recommended that Plaintiff's *Wilkins* motion be denied as moot. As stated above, the Court has rejected Magistrate Judge Lee's recommendation that Jefferson Pilot's cross motion for judgment as a matter of law be granted. The Court must therefore also **REJECT** Magistrate Judge Lee's recommendation that Plaintiff's *Wilkins* motion be denied as moot.

For the reasons stated above, Plaintiff's *Wilkins* Motion for Judgment on Defendant

Jefferson Pilot's Counterclaim or, in the Alternative, Plaintiff's Motion to Dismiss Defendant's Counterclaim Pursuant to Fed. R. Civ. P. 41(b) [Court Doc. No. 48] is **DENIED**.

## IV.    CONCLUSION

For the reasons discussed above, it is hereby **ORDERED**:

(1)    Plaintiff's *Wilkins* Motion for Judgment on Defendant Jefferson Pilot's Counterclaim or, in the Alternative, Plaintiff's Motion to Dismiss Defendant's Counterclaim Pursuant to Fed. R. Civ. P. 41(b) [Court Doc. No. 48] is **DENIED**.

(2)    Plaintiff's Motion for Judgment on the Pleadings [Court Doc. No. 31] is **DENIED** as to Defendant Sun Life and **GRANTED** as to Defendant Jefferson Pilot;

(3    Defendant Jefferson Pilot's Cross Motion for Judgment as a Matter of Law [Court Doc. No. 36] is **DENIED**;

(4)    Defendant Sun Life's Motion to Deny Relief and to Affirm Its Decision to Deny Benefit [Court Doc. No. 34] is **GRANTED**;

(5)    Plaintiff's Above-Captioned Claims against Defendant Sun Life are **DISMISSED WITH PREJUDICE**.

The only claim that remains pending is Defendant Jefferson Pilot's counterclaim against Matthews under 29 U.S.C. § 1132(a)(3).  The Court will set a hearing for a later date and time to ascertain the viability of Jefferson Pilot's counterclaim and to reset such deadlines as the parties deem necessary for resolution of the counterclaim.

SO ORDERED this 26th day of September, 2007.

_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE